UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **HEBERT BOSWELL** | **CIVIL ACTION NO. 06-1611** |
| **VS.** | **JUDGE DOHERTY** |
| **MICHAEL J. ASTRUE**<br>**COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE METHVIN** |

### REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, **IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

*Background*

Born on September 21, 1951, Herbert Boswell, Jr. ("Boswell") is 56 years old. After high school graduation in 1967, Boswell worked continuously until he was injured in December, 2003 (Tr. 179). For the last 28 years Boswell worked as a wireline operator. All of the jobs that Boswell has held were manual labor jobs in which he was required to lift at least 75 to 100 pounds frequently (Tr. 179).

Boswell filed an application for disability insurance benefits on November 17, 2004, alleging disability as of December 30, 2003 due to a work-related knee and back injury. (Tr. 46-48, 60). After initial denial, an administrative hearing was held. On May 26, 2006, the ALJ issued an unfavorable decision (Tr. 10-18, 175-92). The Appeals Council denied review, (Tr. 3-6), making the ALJ's decision the final decision of the Commissioner from which Boswell now appeals.

### *Assignment of Errors*

Boswell raises two issues on appeal: (1) the ALJ failed to address the "worn out worker rule" to conclude that he was disabled; and (2) the ALJ failed to consider the effect of his need for repeated breaks in determining his residual functional capacity.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

### *Analysis*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

> 1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

3

    2.      A person who does not have a "severe impairment" will not be found to be disabled.

    3.      A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

    4.      If a person can still perform his past work, he is not disabled.

    5.      If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

Here, the ALJ found that Boswell has the following severe impairments: "status-post arthroscopy of the right knee revealing underlying degenerative changes. . . [and] degenerative lumbar changes." (Tr. 14)  The ALJ found that Boswell is unable to return to his past relevant work as a wireline operator, but has the residual functional capacity to perform a restricted range of medium work.  Relying on the testimony of a vocational expert, the concluded that Boswell could perform unskilled occupations such as laborer (other than construction), hand packer and vehicle washer.  The ALJ thus found that Boswell was not disabled.

**Medical Evidence**

Boswell was injured on the job on December 30, 2006 when he fell down stairs.  He never returned to work (Tr. 60, 179-181).  Medical records from the Plaquemines Medical Center from that date include the diagnosis, "Concussion, rib pain, knee contusion, wrist sprain" (Tr. 60).  X-rays that date show spurring of the anterior superior aspect of the patella; no evidence of fracture, dislocation or other disease (Tr. 63).  The impression was "patella spurring."  (Id.).  The x-rays showed no evidence of any rib fracture, any fracture to the right hand, right forearm or to the cervical or thoracic spine (Tr. 64).

4

On January 5, 2004 x-rays from Teche Regional Medical Center include the impression, "Probable Fractures of the Right Ribs . . ." (Tr. 97).

Medical records from Albert Lianter, M.D. dated January 5, 2004 to July 20, 2004 diagnose Boswell with back pain, lumbar sprain, anxiety, and obesity (Tr. 66-78). Dr. Lianter's examination on May 12, 2004 indicated dyslipidemia, seizure disorder, weight gain, osteoarthritis, and facial rash (Tr. 73). During this period, Dr. Lianter prescribed Adipex, Xanax, Medrol Dosepak, Diprolene cream, Mycolog cream and Vicodin.

Medical records from the Bourgeois Medical Clinic covering the period from January 2, 2004 to January 7, 2004 indicate multiple contusions and abrasions, closed fracture of four ribs (Tr. 98-107).

Dr. Jeffrey C. Fitter treated Boswell from January 30, 2004 to October 24, 2005 (Tr. 108-127, 140-146). On July 20, 2004 at the Teche Regional Medical Center, Dr. Fitter performed diagnostic arthroscopy with arthroscopic articular cartilage debridement medial compartment on Boswell's right knee (Tr. 80). Dr. Fitter's postoperative diagnosis was, "diagnostic arthroscopy with arthroscopic articular cartilage debridement medial compartment" (Id).

On September 21, 2004, Dr. Fitter noted that Boswell had reported no long-term improvement following an iliotibial band injection at his last doctor's visit and had quite a bit of discomfort in his ribs and right iliac region after mowing his lawn (Tr. 112). Dr. Fitter states that he is not sure of what he can do for Boswell's right knee and notes that Boswell remained symptomatic from right rib fractures 9 months post injury which he thought was a "bit unusual" (Id).

5

On November 22, 2004, Dr. Fitter saw Boswell and reviewed a Functional Capacity Evaluation ("FCE") performed three weeks earlier. Dr. Fitter found the evaluation to be valid. (Tr. 111). Dr. Fitter determined that Boswell could function in the medium-work category with additional restrictions, but could not return to his prior employment as a wireline operator (Id.). Dr. Fitter indicated that Boswell reported no significant changes in his chronic condition, and had been tapering off his medication (Id.). Dr. Fitter stated that he would recommend that vocational assistance be provided to Boswell to return to work according to the FCE restrictions (Id.).

In correspondence to Boswell's attorney on March 2, 2005, Dr. Fitter stated that it is possible but unlikely that Boswell would recover sufficiently to return to his prior occupation in two years (Tr. 144). Dr. Fitter opined that Boswell's restriction would be permanent and that Boswell is not totally disabled but can return to work in a restricted capacity (Id.). He believed his opinion was confirmed by the FCE done on November 4, 2004, concluding he was capable of a physical demand level of "medium with restrictions" (Id.). Dr. Fitter encouraged Boswell to attend computer school which would allow him to work in an office setting at a sedentary or light level (Id.).

Orthopaedic surgeon Dr. John P. Sweeney, examined Boswell on two separate occasions (Tr. 136). On June 28, 2004, he concurred with Dr. Fitter's opinion that Boswell undergo a knee arthrosocopy (Tr. 136). On April 28, 2005, Dr. Sweeney opined that intra-operative findings showed significant medial compartment arthritic change and his past medical history indicates one, possibly two, knee surgical procedures around eight or nine years ago (Tr. 138). Dr. Sweeney notes that Boswell's pre-operative MRI scan also pointed to significant arthritis in his knee (Id.). Dr. Sweeney concurred with Dr. Fitter that Boswell could not work safely as a

6

wireline operator (Id.). Dr. Sweeney opined that Boswell's right knee impairment would make it problematic for him to perform activities that required excessive stair climbing, squatting, kneeling, and prolonged standing (Id.).

## The "Worn-out Worker Rule"

Boswell contends that he is disabled under the "Worn-out Worker Rule" under 20 C.F.R. §404.1562. According to the rule, a claimant who meets the following three criteria will be considered unable to do any lighter work and will be deemed disabled: (1) has no more than a marginal education; (2) has work experience of 35 years or more during which the claimant only performed arduous unskilled physical labor; and (3) the claimant is not working and is no longer able to do his past work because of a severe impairment or impairments.

It is undisputed that Boswell has worked since 1967 at an arduous unskilled physical labor job, and that he is no longer working. Further, the ALJ found that he is unable to do his past relevant work as it exceeds his residual functional capacity.[1] Thus, Boswell must establish that he has a marginal education in order to satisfy the Worn-Out Worker Rule.

The Commissioner argues that Boswell does not have marginal education because he graduated from high school, and the "Regulations clearly state that a high school education exceeds a marginal education," citing 20 C.F.R. § 404.1564(b).

While the regulations provide generally that a marginal education is formal education at a sixth grade level or less, the regulations also provide that formal education is not conclusive of a person's educational experience. 20 C.F.R. § 404.1564(b) provides in pertinent part:

---

[1] Tr. 16.

7

> (b) How we evaluate your education. The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting. **Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities.** The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education. In evaluating your educational level, we use the following categories:
>
> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. **We generally consider that formal schooling at a 6th grade level or less is a marginal education.**
>
> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, **but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.**
>
> (4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. **We generally consider that someone with these educational abilities can do semi-skilled through skilled work.**

<u>Id.</u>. (emphasis added).  *See also* <u>Albritton v. Sullivan</u>, 889 F.2d 640, 643 (5th Cir. 1989).

At the hearing, the VE testified that Boswell would be incapable of performing his past work, which was at the heavy level, but there were jobs that he could perform of an unskilled level.  Boswell testified that he had completed high school; that the Louisiana worker's

8

compensation administration attempted to give him vocational assistance and get him into computer training school; that the vocational assistants concluded that he needs computer training to be placed in a job; that he went to computer school for two nights but did not do very well; that he didn't know how to turn a computer on; and that his classmates were far more advanced (Tr. 179-181).

Boswell argues that, since he cannot presently work at any level above "unskilled" according to the testimony of the vocational expert, and because he lacks skills to even turn on a computer, his educational is clearly marginal.[2]

Boswell relies on Miller v. Shalala, 825 F. Supp. 776, 782 (N. D. Tex. 1993) wherein the court found that there was nothing in the record or testimony to show that the plaintiff was even a semi-skilled worker but was an unskilled worker. The evidence showed that the plaintiff had a marginal education. The court concluded that the ALJ's finding that the plaintiff had acquired work skills that were transferable to other jobs was inconsistent with the ALJ's finding that the plaintiff had only a marginal education which permitted him to do simple unskilled jobs. The court applied the worn-out worker rule, finding the plaintiff disabled.

However, as the Commissioner points out, the skill level of a job does not necessarily equate to one specific educational level. For instance, an individual who can only perform unskilled work may have a marginal or *limited* education. 20 C.F.R. § 404.1564(b)(2-3). The regulation does not support the proposition that a claimant able to perform only unskilled jobs therefore has only a marginal education. Boswell has not provided legal authority for his

---

[2] Boswell Memorandum, Rec. Doc. 7, p. 4.

argument that his inability to "turn on a computer," supports a finding that he is only marginally educated. His reliance upon Miller, *supra* is misplaced.

As Boswell has not directed the Court to any evidence to contradict that his high school education is greater than a marginal education, the undersigned finds that he has not established that he is a "worn out worker" in accordance with the Regulations.

**Need for Frequent Breaks**

Boswell testified at his hearing that he experiences constant pain in his right knee, lower hip and back (Tr. 190). Boswell testified that following 15 minutes of work he has to take a 30-minute break (Tr. 191). Boswell argues that he cannot work full time due to his need to takes these breaks.

Pain can be a disabling condition by itself when it is constant, unremitting, and wholly unresponsive to therapeutic treatment. Francois v. Commissioner of Social Sec., 2001 WL 322194, *11 (E.D. La. 2001), citing Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994). In determining whether a claimant's pain is disabling, the first consideration is whether the objective medical evidence shows the existence of an impairment which could reasonably be expected to produce the pain alleged. Francois, 2001 WL 322194, at *11. A claimant's subjective complaints must be corroborated at least in part by objective medical testimony. Houston v. Sullivan, 895 F.2d 1012, 1016 (5th Cir. 1989). Generally, medical factors that indicate disabling pain include limitation of range of motion, muscle atrophy, strength deficits, sensory deficits, reflex deficits, weight loss or impairment of general nutrition, noticeable swelling, and muscle spasm. Id. Other "medical signs" that support a finding that a claimant is

10

disabled include a physician's diagnosis based upon history, symptoms and response to medication.

When there are conflicts between subjective complaints of pain and objective evidence, the ALJ is to evaluate the claimant's credibility. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991). "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence." Carrier, 944 F.2d at 246. This court may not reweigh the evidence. Id., citing Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir.1990).

In the instant case, the ALJ found Boswell's testimony to be generally credible but that he did not describe symptoms and limitations of an incapacitating nature (Tr. 16). The undersigned finds that Boswell's complaints of pain and inability to work for no more than 15 minutes without a 30 minute break are not supported by the evidence. The undersigned concludes that substantial evidence supports the ALJ's finding. Although Boswell underwent right knee arthroscopy, the FCE conducted in November, 2004 (Tr. 150-74), eleven months following Boswell's injury and three months following Boswell's knee surgery indicates that Boswell had the capacity to perform a restricted range of medium work with occasional lifting of up to 50 pounds; frequent lifting of up to 25 pounds; occasional carrying of up to 40 pounds; crouching and climbing of ladders to be performed only "rarely" (Tr. 152). Standing could be performed frequently (2 ½ to 5½ hours in the work day) (Tr. 154). The FCE provides that Boswell should have the opportunity to alternate positions approximately every 30 to 40 minutes (Tr. 152). The ALJ indicated there were no limitations on sitting (Tr. 16).

Post arthroscopy on July 27, 2004, Dr. Fitter found degenerative articular disease present in the medial compartment of Boswell's knee, however, Dr. Fitter adopted the FCE findings and

11

concluded that he was not totally disabled but could do medium work with restrictions (Tr. 115, 144). Although Dr. Fitter restricted Boswell to 30 minutes of driving with 15 minutes of rest, he did not restrict him to rest breaks while at work (Tr. 109).

Additionally, Dr. Sweeney, an orthopaedic surgeon, upon examination of Boswell, also agreed with the FCE findings (Tr. 138). These medical factors do not demonstrate disabling pain.

Furthermore, the record shows that Boswell's lifestyle is not consistent with that of one who is experiencing constant and wholly unremitting pain. In his Activities of Daily Living Form, Boswell reported that he drinks a cup of coffee during the day, watches tv, plays games on the computer, drives his wife Brenda to her "appointments" when she cannot find a ride and folds clothes when he is not in pain (Tr. 49-53). Such activities are not indicative of disabling pain.

The undersigned therefore finds that the medical evidence does not support a finding that Boswell is required to take the breaks he describes.

For the foregoing reasons, the undersigned concludes that substantial evidence supports the ALJ's residual functional capacity assessment and his finding that Boswell can engage in a restricted range of medium work.

*Conclusion*

Considering the foregoing, it is recommended that the Commissioner's decision be **AFFIRMED** and the case be dismissed.

Any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, Richard v. Sullivan, 955 F.2d 354 (5th Cir. 1992) and Shalala v. Schaefer, 509 U.S. 292 (1993).

12

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** **Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on February 27, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)